```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:  _____
DATE FILED: _3/20/2022_
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ASHU SHUKLA,  **Index No.:**
 **1:21-CV-03287-JMF**

        Plaintiff,

    -against- **NOTICE OF APPEAL,**
 **NOTICE TO PRESERVE EVIDENCE, AND**
 **NOTICE TO EXTEND TIME FOR FILING AN APPEAL**

APPLE INC,

DELOITTE CONSULTING LLP,

    Defendant.
-------------------------------------------------------X

## NOTICE OF APPEAL, NOTICE TO PRESERVE EVIDENCE AND NOTICE TO EXTEND TIME ON FILING AN APPEAL

PLEASE TAKE NOTICE AND/OR BE ADVISED that on March 18th 2022, the Plaintiff of this case, Ashu Shukla, case# *1:21-CV-03287-JMF,* hereby appeals to the Court of Appeals for the Second Circuit for Judge Furman's court order dated March 18th 2022 (doc# 130) for denying plaintiff's **Motion to hold the Appeal for the case in Abeyance**. The appeal is being filed under abuse of discretion by Judge Furman for wrongful denial of the case, wrongful denial for the Motion of Abeyance, and other related judgements on the matters identified on the court docket.

PLEASE TAKE NOTICE AND/OR BE ADVISED that on March 18th 2022, the Plaintiff of this case, Ashu Shukla, case# *1:21-CV-03287-JMF*, hereby would like to serve a **Notice to Preserve Evidence** to the US District Court for the Southern District of New York (SDNY) to preserve a copy of the Payment previously sent by the plaintiff on Appeal# 21-2114, 21-2441, 21-3095, and/or as identified on the court order# 130 [**Exhibit A**]. The court is also requested to preserve a copy of the returned mail sent by USPS back to the court, and post it on the court docket [1].

PLEASE TAKE NOTICE AND/OR BE ADVISED that Judge Furman had **absolutely no authority to order destruction of evidence** on court order# 130. Nonetheless, since the **order was filed late on Friday March 18th 2022**, the plaintiff's Notice of Appeal is a timely and just tool to ensure that court preserves such evidence. Since the order / act provides direct support to Deloitte Female HR professionals to safeguard their interests on their **malicious sexual services**, any bias by the court on such matters would provide adverse inference and would be held against Deloitte.

In addition, it must be noted that the prime accused on the case Deloitte HR Joanna Rohde, who has been desperately trying to conceal evidence on the Whistle Blower allegations identified by the plaintiff since mid-2020, will be a direct beneficiary of Judge Furman's order. The Court must note that in March and April 2018, **Deloitte** HR professionals including Joanna **Rohde knowingly**

---

[1] Previously, on cases# **21-2114, 21-2441, 21-3095**, only specific copies of returned mail that provided immunity to Deloitte against lawsuits were posted by the clerk on court docket. Copies of returned mail that helped the plaintiff were not identified or posted by the court clerk on the court docket. Thus, this is just one of the several instances of bias against the plaintiff, and is sufficient for the plaintiff or case witnesses to request for a remedy from the court.

**and intentionally sabotaged investigation and investigatory reports** on plaintiff's Whistle Blower allegations [D000250-259, D0001163-1175 and others] – such reports include multiple **derogatory statements** with no evidence or connection to facts, and as a matter of fact are **directly opposite to the facts or evidence provided by the plaintiff** as part of discovery. Since then the involved HR professionals, specially Joanna Rohde and Austin Perez, have been desperate to **safeguard their personal interests** such that other identified or accused employees would be forced to take their side, and not become a party to a fair investigation on the matters.

PLEASE TAKE NOTICE AND/OR BE ADVISED that the Court of Appeals for the Second Circuit has jurisdiction of this case on appeal, as this motion was incorrectly denied by the District Court Southern District of New York (SDNY). The Court orders cited on this Notice to Appeal include order# *130 [**Exhibit A**], order# 121 [**Exhibit B**], order# 119 [**Exhibit C**], order# 116 [**Exhibit D**], order# 113 [**Exhibit E**]* on the court docket. The Clerk of Court is requested to please omit nothing from the record on appeal, and specially include Plaintiff's Motion for Recusal of Judge Furman, Plaintiff's Motion for Reconsideration of Recusal of Judge Furman, Plaintiff's Notice to Abandon Appeal, Plaintiff's Notice to Withdrawal of Abandonment of Appeal, Order Dismissing the case, Order on Plaintiff's Motion for Abeyance, etc., and the corresponding underlying Motion documents including Memorandum of Law, Declaration in Support and Exhibits for each such order.

PLEASE TAKE NOTICE AND/OR BE ADVISED that post filing plaintiff's Notice of Appeal, the district court no longer has subject matter Jurisdiction on the issues identified on **Order# 130**.

Thus, plaintiff's Notice to Preserve Evidence is relevant as such evidence needs to be cited and used at the US Court of Appeals and the US Supreme Court, and at other district courts in new complaints filed at other courts by interested Parties and their Privies, specially against Deloitte and Joanna Rohde.

The filing of notice of appeal confers jurisdiction on the court of appeals and divests the district court of control of those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Disc. Co, 459 US 56, 58, 103, S. Ct 400, 74 L. Ed 225 (1982)*

Similarly, PLEASE TAKE NOTICE AND/OR BE ADVISED that post filing plaintiff's Notice of Appeal, the district court no longer has subject matter Jurisdiction on the order identifying case dismissal or similar orders held under abuse of discretion as identified on complaints# **1:19-cv-10578-AJN** and **1:21-cv-03287-JMF** [2]. Since the Appeals filed by the plaintiff# **21-254, 21-557, 21-895, 21-2114, 21-2441, 21-3095** are intertwined, and given that the latest related or intertwined Appeal# **21-3095** on the issues is still pending with the US Court of Appeals, the defendant cannot cite or use any Judicial immunity on the identified issues.

Previously, on March 4th 2021, the US Court of Appeals Court Clerk Mr. Ralf (Phone# 212-895-8565 ) verified that the Plaintiff's Certified Bank Check Payment was valid, but sent to the wrong court  (US Court of Appeals vs. the District Court), and another Appeals court clerk (Mr. Richard)

---

[2] The district court still has ancillary Jurisdiction after dismissal to adjudicate collateral matters such as attorney fees and costs (id).

4

who physically inspected and verified the certified check as a valid form of payment had returned it back to plaintiff's home address. This was **before** the 90-day deadline to file an Appeal with the US Supreme Court on Appeal# 21-2441 against Defendant Deloitte Consulting (dismissed on 12/10/2021 due to failure to pay fee by the exact same payment method). In fact, Mr. Ralf extended plaintiff's deadline to make a payment on Appeal until 03/21/2022 (*id*) and suggested that since the plaintiff is currently travelling and is not in the US, the plaintiff can also make a payment by Credit Card or Debit Card to the US District Court.

PLEASE TAKE NOTICE AND/OR BE ADVISED that based on the discussions with the US Court of Appeals Court Clerks and based on the orders received by the US District Court, it is clear that the plaintiff has received inconsistent statements, instructions or orders (id). Such matters form the basis of a finding of "**good cause**" or "**excusable neglect**", both in-terms of any delay in filing an Appeal or a Notice of Appeal with the US Court of Appeals or the Supreme Court of the United States of America pursuant to **Rule 6** of the Federal Rules of Civil Procedure and **Rule 4** of the Federal Rules of Appellate Procedure for cases# 21-254, 21-557, 21-895, 21-2114, 21-2441, 21-3095.

In addition, defendant Deloitte has indulged in fraudulent concealment of material facts, and fraud on court, which, combined with multiple biased orders held under abuse of discretion, also provide a good cause for any delay in filing of an Appeal, re-filing the case / complaint, and toll the statute of limitation for the plaintiff and all witnesses on the case.

Specifically, the following rules apply on the issues identified on this Appeal:

**Rule 4 (a) (2)** of the Federal Rules of Appellate procedure provides rules on **Appeal Filing Before Entry of Judgment**. A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

**Rule 4 (a) (5)** of the Federal Rules of Appellate procedure provides rules on **Motion for Extension of Time**.
(A) The district court may extend the time to file a notice of appeal if:
(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

PLEASE TAKE NOTICE AND/OR BE ADVISED that the plaintiff filed his Appeal for Recusal of Judge Furman on 12/17/2021. However, Judge Furman Continued to abuse his discretion on multiple issues – the same can be identified on orders dated 03/18/2022 (**order# *130* *[Exhibit A]*)**, *02/15/2022 (**order# 121** [Exhibit B]), 02/10/2022 (**order# 119** [Exhibit C]), 02/09/2022 (**order# 116** [Exhibit D]), 02/04/2022 (**order# 113** [Exhibit E]).* Pursuant to Rule 4(a)(2), Appeal filed before the entry of the judgment or order—is treated as filed on the date of and after the entry. Hence, the date of filing of the Appeal for Recusal of Judge Furman (case# 21-3095) can now be established as **03/18/2022.** This also implies that the <u>US Court of Appeals cannot dismiss or issue a mandate on 03/21/2022 for an Appeal filed on 03/18/2022</u>, hence, the US Court of Appeals must either vacate its order# 68 on the Appeal or issue another order that supersedes the previous order as identified on [**Exhibit F**].

6

PLEASE TAKE NOTICE AND/OR BE ADVISED that the plaintiff filed a Motion to hold the filing of the Appeal in abeyance. The Motion was timely filed within 14-days of the final order on dismissal of the case. Dismissal order dated 02/15/2022 on Plaintiff's Motion for Reconsideration of case dismissal is identified on [**Exhibit B**]. Original dismissal order dated 02/10/2022 on the case is identified on [**Exhibit C**]. The dismissal order entered exactly on the 90-day mark of the issuance of US Court of Appeal's Mandate on case# 21-2441 (dated 12/10/2022) **suggests or provide an inference** on the direct involvement of Magistrate Judge Aaron's Court Clerk Miss Alison Martin and Deloitte HR Joanna Rohde on the matter, since they are direct beneficiaries of continued denials or dismissals of plaintiff's valid court filings (including Motion for recusal of Magistrate Judge Aaron) and requests. However, the intertwined nature of such cases and their dependency on plaintiff's pending appeal (case# 21-3095) suggests that the plaintiff has a good cause to delay the filing of Writ of Certiorari on case# 21-2441 with the US Supreme Court after the expiry of the 90-day prescribed time line.

Since plaintiff Motion to hold the Appeal in abeyance can also be characterized as a Motion for Extension of time. Thus, pursuant to Rule 4(a)(2) and Rule 4(a)(5), because the court delayed in providing their Judgement until 03/18/2022 for Plaintiff's Motion for Abeyance / Extension of time (final order dismissing the case was filed on 02/15/2022, while plaintiff's Motion for Abeyance was filed on 03/01/2022), and because during the same time the plaintiff received inconsistent statements from the US District and Appellate Court, the plaintiff has shown good cause or excusable neglect in filing the Appeal on dismissal of this case.

**In addition, the plaintiff would like to highlight the following facts, arguments and inferences in support of his Notice of Appeal**:

The information provided or identified below on this below has already been posted on the court docket around two (2) or more years back, and represents the facts pertaining to this lawsuit or Appeal – and identify Deloitte HR and DOJ/FBI agent Joanna Rohde's direct involvement in discrimination and retaliation against the plaintiff.

On this complaint, the plaintiff has identified the following critical aspects of plaintiff's Whistle-blower allegations. In order to build immunity from such issues, as identified by the plaintiff on this complaint, the defendant is desperate to save itself **not only** because the defendant has beeen able to conceal their fraud under the color of law [3], **but more so** because the defendant is DOJ/FBI agent Joanna Rohde was personally involved in instituting such fraud during plaintiff's employment at Deloitte and post his termination, and the **law provides extended statute of limitations of upto 5-years** to **file a complaint against her and Deloitte**.

1. Deloitte hiring an employee for a role, however **forcing** him to work on projects on **completely different subject areas / roles without any basic training**

2. Deloitte **assigning** such an employee the **workload of multiple employees,** and **creating** a **hostile work environment** if the employee raises an issue

---

[3] In addition, based on several biased orders against the plaintiff, Deloitte's privileged court access given their DOJ/FBI agent and HR Professional cannot be ignored by the case witnesses or the general public of the United States

3. Deloitte intentionally and knowingly **assigning** the identified employee a **negative performance rating** and **terminating** his employment

4. Deloitte Talent Relations Team **leaking** the details of an employee's **confidentially filed ethics and integrity complaint** to members of the business unit and to the accused supervisors prior to investigation

5. Deloitte instituting **visa fraud** against the employee such that the employee is unable to change or adjust his employment-based visa status with a new employer within a specific period of time

6. Deloitte instituting **recruitment fraud** against the employee to ensure that he is unable to timely secure alternate employment

In fact, on their response dated December 7th 2021 (**doc# 101**), the defendant identified and requested for *"an order barring Shukla from filing any future factual for which he has no evidentiary support or for which a reasonable person would not believe that there would be factual support after an investigation"*. The exact same requested was reposted by the defendant on the court docket on March 18th 2022 (**doc# 127**). However, there is both factual or evidentiary support for plaintiff's valid filings.

For example, Deloitte's discovery response on plaintiff's employment lawsuit directly and clearly suggests that both **Partner Michael Fernandez** and **HR Joanna Rohde** knew that the plaintiff

9

had a medical condition [defendant response **D0001163, D000985**]. However, they retaliated against the plaintiff **not only** by releasing him from projects (JP Morgan and others) and sending him to interview on projects where the plaintiff was destined not to be hired (Scotia Bank), **but the evidence also suggests that** they retaliated against the plaintiff by leaking confidential details of plaintiff's medical condition [4] to supervisors like Kartik Nagaraja and Anand Sairam, such that these Deloitte leaders could create a hostile work environment for the plaintiff and mock the plaintiff for his inability to drink alcohol (*id*).

It must be noted that Magistrate Judge Aaron has already approved plaintiff's hostile work environment claims based on disability / medical condition [**Exhibit G**]. That said, Magistrate Judge Aaron is facing recusal for his multiple biased orders and abuse of discretion, and due to the dependencies or intertwined nature of the complains, his recusal is currently pending with the US Court of Appeals (case# 21-3095 where Judge Furman Failed to Disqualify Judge Aaron and abused his discretion way too many times).

Pursuant to Rule 4 of the Appellate procedure, notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry. In this case, on 03/18/2022, Judge Furman entered his order on the dismissal of plaintiff's Motion to hold appeal in abeyance, which provides a direct cause-effect relationship of him not disqualifying Magistrate Judge Aaron. Thus, the law provides that disqualification of

---

[4] Deloitte Leaders Deborshi Dutt and Brenda Arends were aware that consumption of alcohol exacerbated plaintiff's underlying medical condition, however, Joanna and Michael knew more, and documentary evidence supports such facts.

Magistrate Judge Aaron and Appeals (**case# 21-254, 21-2114, 21-2441, 21-3095**) should be treated as filed on the date of and after the entry of order dated **03/18/2022** (doc# 130).

1. The fact remains that Deloitte used or targeted **specific employees of foreign nationality and H1B specialty visa** to further their fraud. For example, Anand Sairam, Kartik Nagaraja, Sriram Ramamurthy, Binu Janardhanan, among others.

2. The fact remains Anand Sairam himself suggested to the plaintiff that he got such requests from the HR (*id*). Plaintiff has identified witnesses to Anand's hostile acts. After the plaintiff filed his lawsuit in January 2019, Anand Sairam, a Deloitte Sr. Manager with higher competency than others identified on the complaint, was moved from Deloitte to another firm in July 2019.

3. The fact remains that Deloitte refused to answer plaintiff's valid discovery requests such as interrogatories, and nearly one year after **refusing to respond** to plaintiff's valid discovery requests, moved Kartik Nagaraja, an employee who was required to answer interrogatories, to another firm in August 2020.

4. The fact remains that Deloitte further discriminated against the plaintiff by incentivizing supervisors such as Sriram Ramamurthy, Binu Janardhanan, who were directly involved in plaintiff's Whistle-blower allegations, by giving them promotion, MBA education sponsorship, extra benefits or responsibilities, **and** Magistrate Judge Aaron's court further incentivized Deloitte by delaying or denying discovery on such valid issues.

Some witnesses on the case (Deloitte Sr. Managers) [5] were **knowingly targeted** by Deloitte Human Resource Professionals like Joanna Rohde, and **were not promoted** to become a **firm Partner**.

In contrast, **female Supervisor** or Leaders such as Ashley Scorsatto and Sai Hampankatta, who helped the malicious interests of female HR professionals (like Joanna Rohde and Brenda Arends), **were incentivized or promoted or both**. Post plaintiff's Whistle blower allegations, the firm did not demonstrate that it was fully committed to ensuring continued adherence to high professional or compliance standards.

For Example, the fact remains that per Deloitte's discovery response [**D000255-256**], defendant HR professionals Kattie Wittenbraker, Brenda Arends and Austin Perez, based on their input from Joanna Rohde, concluded and confirmed an allegation on plaintiff's complaint that plaintiff's would be given a poor performance rating and his rating would not change regardless of his performance or positive reviews by supervisors. Notably, the discussion with Joanna Rohde was held on 03/18/2018, 120-days post plaintiff's anaphylactic medical emergency event, such that Joanna's Fraud in instituting fake sexual harassment allegation and her direct help or effort in trying to safeguard the interests of the financial services partners can be legally protected –

---

[5] Based on Deloitte's desperation, abuse of plaintiff's rights under the color of law and multiple favorable Judgements entered in favor of Deloitte, the firm likely denied such witnesses an opportunity to be placed at more prestigious firms such that the firm can safeguard itself from emerging lawsuits based on retaliation or discrimination on plaintiff's disability, gender, race or national origin. Notably, their performance records have not been released by Deloitte.

especially given the rationale that post **120-days** there would be no **camera or voice recording** left for the **December 2017 event**. As evident from the defendant discovery response, post this timeline, Deloitte Female HR professionals **toned down their rhetoric** as identified on the defendant's discovery response on plaintiff's Whistle Blower allegations. Thus, it is evident that Deloitte HR Joanna Rohde is a very calculative and malicious lady, who is desperate to conceal her fraud – and, the plaintiff would not like a scam artist like her to succeed.

Thus, multiple pieces of evidentiary support such as (a) plaintiff's complaint, (b) defendant documentary evidence, (c) defendant's refusal to cooperate on discovery, (d) court's biased orders against plaintiff's urgent discovery requests, and (e) termination and placement of identified witnesses to other firms suggests that defendant has knowingly made misrepresentation on court and instituted fraud on court.

The fact remains that the plaintiff and such Deloitte Supervisors [6] were **<u>financially or professionally harmed</u>** by the malicious acts of Deloitte Human Resource Professionals like Joanna Rohde, and have a valid personal liability lawsuit against her and Deloitte Partner Michael Fernandez. Based on the tens of biased Judgements across complaints filed by the plaintiff, Deloitte and Joanna's vested interests and efforts to influence the court are evident.

---

[6] Deloitte provided some support to these Supervisors in terms of moving them to other firms, however, the fact remains that these Deloitte Leaders were denied an opportunity to become firm Partners. It is likely that the firm likely influenced or forced such individuals to take alternative employment at non-prestigious firms based on their visa situation.

Since these supervisors have family and children in the United States, due to the inherent nature of their professional and personal responsibilities, they become an easy target for malicious Human Resource Professionals like those from Deloitte. Deloitte and its HR professionals were able to **influence or force** such supervisors to (a) first institute discriminatory or retaliatory acts against the plaintiff on the name of protecting the firm when there existed clear evidence of misdeeds or malicious acts by these very identified Deloitte Leaders / HR professionals (for ex. Malicious letter of reprimand issued to the plaintiff by Partner and HR), (b) accept incentives such as bonus, career advancement or promotion, and (c) in case of a court case or complaint and in light of evidence against them force such supervisors to transfer to another firm on the name of saving their professional careers. Deloitte would likely further influence or force such supervisors to give false testimony against the plaintiff on court to serve their business interests, and the onus is on such supervisors to identify how directions of instituting employment fraud were coming from above.

Since there is no end to the inherent cycle of malicious or criminal acts by such corporate stewards, the onus is on such supervisors to break the glass ceiling and identify the malicious acts of the HR professionals who (a) forced these Supervisors to intentionally assign a negative performance rating to the plaintiff, and (b) forced these Supervisors to make discriminatory comments and institute hostile work environment against the plaintiff.

Since the firm further blocked plaintiff's valid discovery requests or internet communications with these witnesses (id), the liability on such matters falls back on Deloitte. The plaintiff is happy to file personal liability claims against such HR professionals like Joanna Rohde etc., and ensure that they become personally liable for the malicious acts.

Plaintiff's Whistleblower allegations provide a just and fair cause for the plaintiff to seek Justice. Based on the inferences provided above, a distant observer would conclude that (a) Deloitte's vested interests and malicious acts on the matter far exceed this plaintiff's reasonable efforts and reasonable court filings to secure Justice, and (b) biased Judgements by the district court on the matter neither uphold the law, nor provide any benefit to the plaintiff or any witnesses on the case, but are only meant to support the financial interests or political interests of Deloitte.

In fact, by filing such a response (doc# 101, doc# 127), the defense has tried to acknowledge that US law enforcement agencies such as DOJ or FBI or their agents **do not indulge** in using investigative tools such as surveillance or tracking of computer and phone communications, biomedical manipulation or influencing the Judiciary. This is contradictory to the information provided by the same agencies on their Federal websites, and contradictory to Court Filings and Judgements for and against these agencies (id).

In terms of evidentiary support, the plaintiff has already identified (a) facts on the matter on his well pleaded complaint, (b) 150-page iPhone software code inserted into his communication device, (c) compute logs showing usage of plaintiff's computer in his absence, (d) physical or bodily symptoms caused by biomedical manipulation such as rashes, hives, upset stomach or others and medications provided by licensed US physicians for treatment, (e) allegations, facts or theoretical knowledge on how biomedical manipulation is caused through radio waves or electro-magnetic devices, (f) allegation under oath of Joanna Rohde's video call to the plaintiff where she identified herself as a DOJ/FBI agent and uses an alias to conceal her identity, (g) hundreds of fake news items targeted and sent to the plaintiff during specific times such as "***Pregnant Virgin Gives***

15

*Birth Without Having Sex*" and "***Woman breast feeds cat on plane***", (h) systematic manipulation of plaintiff's phone, internet and computer communication systems including content management servers, (i) creation of fake medical records for the plaintiff (and others) to support defense against her own hostile work environment creation, and her self-identification as a Federal agent to multiple other individuals, (j) targeting plaintiff's friends or family on the basis of providing fake news to deceitfully gain tactical advantage, or influencing them to enact in order to deceitfully engage them in favor of Deloitte, and possibly launder funds, and, (i) hundreds of biased court orders entered against the plaintiff that provide immunity to Joanna Rohde or her support staff Austin Perez.

For example, in an effort to **frame Dr. Niti Aggarwal**, Joanna Rohde in her notes wrote "*plaintiff's doctor said plaintiff is allergic to alcohol*". However, in contrast, as identified on the complaint, the plaintiff stated that "h*e had allergies of active nature, he carries an Epipen ... suffered an anaphylactic reaction*". Thus, Joanna Rohde, as evident from defendant's discovery response, clearly captured selected pieces of information and/or paraphrased the conversation to gain tactical advantage. The discriminatory and retaliatory acts by Dr. Niti's previous employer during similar time frame under similar circumstances as witnessed by the plaintiff clearly suggest the involvement of Deloitte HR professionals, including Joanna Rohde and her support staff Austin Perez.

Notably, as experienced by the plaintiff himself, **Deloitte Talent Relations team** succeeds by **throwing dirt on** or **by maligning the image of** innocent or honest personnel. Deloitte Talent Relations employees believe that in case of a lawsuit, they would be able to settle the case with an

innocent employee like the plaintiff at a cost, and they have deep pockets since the firm generates an annual revenue of $50 Billion, and for such reasons are able to retaliate against innocent employees like the plaintiff or his friends and family for an extended period of time.

Deloitte HR and DOJ/FBI agent Joanna Rohde is hoping that she can deceitfully institute fraud not only on the plaintiff but also on others, and maintain an illegal control of several witness on this lawsuit. Based on her actions, one may infer that one of her goals to frame the plaintiff, and gain tactical advantage over other HR professionals like Brenda Arends, specially by instituting (fake) events or providing misinformation [7] have thus far been successful. Nonetheless, the plaintiff must point out that the courts have held that such supervisors like Joanna Rohde will be financially held responsible for their malicious acts.

Thus, there is both factual and evidentiary support on such matters. Since Deloitte and their defense attorneys are unable to investigate such matters, firm leaders should resign and make way for other officials with better morals and integrity to lead the firm.

Respectfully Submitted,
**Ashu Shukla**
*_s_ashu shukla*
*Plaintiff*
202 Salem CT, Apt#11

---

[7] Previously, the plaintiff has identified Joanna's direct involvement on sending sexually inviting messages via a hacked chat to the plaintiff, herself and Brenda Arends. The plaintiff has also identified that she personally wanted to recruit the plaintiff into her sexual services, and sideline other female professionals.

In any case, whether she is DOJ, FBI or NSA, her attempts to protect her personal interests by framing individuals with less skills cannot and should not go unpunished. Other law enforcement officials must maintain a surveillance on her to ensure safety and security for current or former Deloitte employees.

Princeton, NJ 08540  
ashu.shukla@gmail.com

Date: 03/18/2022

*Enclosed*: Exhibits A, B, C, D, E, F, G